**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CATHERINE MABREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-06-342-C |
| | ) | |
| SECURITY SERVICE FEDERAL CREDIT UNION; and NATIONAL CREDIT UNION ADMINISTRATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff filed the present lawsuit as a class action diversity complaint against Security Service Federal Credit Union ("SSFCU") and National Credit Union Administration ("NCUA") on March 31, 2006. (Dkt. No. 1.) Defendant NCUA has filed an answer (Dkt. No. 22), and the disposition of claims against NCUA are not affected by this Order. References to "Defendant" herein refer to SSFCU only. Defendant SSFCU filed a motion to dismiss (Dkt. No. 21), and Plaintiff filed a response (Dkt. No. 25). SSFCU submitted a reply to Plaintiff's response (Dkt. No. 28), to which Plaintiff filed a surreply (Dkt. No. 31.) Accordingly, the matter is now at issue.

## I. FACTUAL BACKGROUND

In July 2001, Plaintiff executed a Note and Security Agreement with Diakonia Credit Union to purchase real property in Denver, Colorado ("Glencoe Property"). (Def.'s Mot. Ex. 2.) Although she is a disabled single mother with an income limited to Social Security benefits of less than $2000/month (Pl.'s Resp. Ex. H), Plaintiff requested Diakonia to finance

over $250,000 to purchase this property. According to Defendant, Plaintiff soon failed to make her monthly mortgage payments due to Diakonia. On May 4, 2004, Plaintiff signed a Loan Modification Agreement with Diakonia which reduced her monthly payments from $1843 to $1366. (Pl.'s Resp. Ex. G.) By October 2004, Diakonia was liquidated and NCUA, acting in its federal capacity as the liquidating agent for Diakonia, assigned certain Diakonia accounts to SSFCU. As a result, SSFCU held the Note, as amended by the Loan Modification Agreement, for the Glencoe Property.

Plaintiff asserts that throughout the life of the loan, she encountered significant difficulty in her dealings with Diakonia, and later with SSFCU. She claims, *inter alia*, that she was unable to access records regarding her account and that the credit union mismanaged her Social Security payments. In April of 2005, however, SSFCU, Plaintiff, and Plaintiff's attorney all signed a Settlement Agreement and General Release, in which Plaintiff agreed to release any and all claims against SSFCU. (Pl.'s Resp. Ex. E.) Thereafter, Plaintiff again fell behind on her monthly payments and failed to pay the property taxes as required. In January 2006, SSFCU began foreclosure proceedings in the District Court of Denver County, Colorado. Following a hearing in which Plaintiff was served and participated, that court entered an order on April 25, 2006, authorizing the sale of the Glencoe Property. (Def.'s Reply Ex. 2.) Plaintiff did not redeem or attempt to appeal the foreclosure sale, which is now final.

## II. PERSONAL JURISDICTION

*A. Standard*

Defendant filed a motion to dismiss on various grounds, including the Court's lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). A court may obtain jurisdiction over a nonresident defendant if the plaintiff can establish that: (1) jurisdiction is proper as determined by the laws of the forum state; and (2) the court's exercise of jurisdiction does not offend due process. Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001). Oklahoma's long-arm statute authorizes jurisdiction over a nonresident defendant if jurisdiction is consistent with due process. 12 Okla. Stat. § 2004(F). Therefore, the personal jurisdiction inquiry under Oklahoma law collapses into a single due process analysis. Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416-17 (10th Cir. 1988).

The Tenth Circuit has clearly laid out the constitutional analysis for personal jurisdiction:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts[,] ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum [s]tate." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1979). The requirement that "minimum contacts" be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. . . .
>
> The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his

> activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984).

OMI Holdings, Inc. v. Royal Ins. Co. of Can.. 149 F.3d 1086, 1090-91 (10th Cir. 1998) (original citations altered).

Here, Plaintiff bears the burden of proving that the Court may exercise personal jurisdiction without offending due process. Wentz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). In the context of this pre-trial motion to dismiss decided without a hearing, Plaintiff need only make a prima facie showing as to the propriety of personal jurisdiction. Id. Plaintiff may establish this prima facie case by demonstrating, through affidavits and other written materials, facts that if proven would support jurisdiction over SSFCU. In ruling on 12(b)(2) motions, the Court will accept all well-pled allegations in Plaintiff's complaint as true and resolve any factual disputes in the parties' affidavits in Plaintiff's favor. Id.

*B. Discussion*

Defendant argues that jurisdiction in this Court is improper, as Plaintiff has failed to demonstrate the existence of either specific or general jurisdiction in this case. Plaintiff asserts that she believes requisite "minimum contacts" exist for specific personal jurisdiction. She does not, however, include any analogous case law supporting her position, nor refute Defendant's factual assertions regarding its (lack of) connection to the forum state. Therefore, the Court will examine whether personal jurisdiction exists under either standard.

1. Specific Jurisdiction

The inquiry for specific jurisdiction consists of two parts.

> First, we must determine whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state. Second[,] if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case.

OMI, 149 F.3d at 1091 (citations and internal quotation marks omitted).

Regarding the first step, the evidence presented by Plaintiff must demonstrate that Defendant has purposely availed itself of the opportunity to do business in Oklahoma. Purposeful availment requires the Defendant's actions to "create a substantial connection with the forum state." Id. at 1092 (internal quotation marks omitted). Defendant contends that it has not established sufficient minimum contacts with the State of Oklahoma to be subject to jurisdiction in this forum. Although Defendant is a large credit union, its branches and employees are all located within Colorado and Texas. Defendant notes that it is not licensed to do business in Oklahoma, and it does not maintain any offices here. Defendant does not maintain any bank accounts, advertise, or own real property in Oklahoma. Defendant does not pay Oklahoma taxes nor keep any records relevant to Plaintiff's claims in Oklahoma. None of the groups with members eligible to join the Defendant credit union

are in Oklahoma, and no employee or agent of Defendant has ever traveled to Oklahoma specifically to solicit business. Defendant has not availed itself of the benefits of litigating in Oklahoma courts.[1] (Def.'s Mot. Ex. 1.) To Defendant's knowledge, Diakonia likewise did not do any business in Oklahoma. (Def.'s Mot. Ex. 1 ¶¶ 9-10.)

Plaintiff argues that Defendant purposefully asserted its activities at Oklahoma because Defendant holds five mortgages on real property located in Oklahoma. Although there is no contention that these mortgages are in any way related to Plaintiff's claims against Defendant, Plaintiff claims that because Defendant holds these mortgages, Defendant is "doing business in the [Western] District" (Pl.'s Surreply at 3) and so Defendant could reasonably anticipate being haled into court here. Defendant asserts it did not solicit the five Oklahoma mortgages, but made these mortgages to accommodate existing SSFCU members who moved to or wanted to buy property in Oklahoma. These mortgages represent less than one-half of one percent of the over 10,000 real property mortgages that SSFCU holds. (Def.'s Mot. Ex. 1 ¶ 27.)

The only apparent contacts between Defendant and the State of Oklahoma – and, indeed, between any element of this case and Oklahoma – are the five SSFCU mortgages and the fact that Plaintiff claims she has been "more or less continuously located" in the Western

[1] Plaintiff argues that Defendant could reasonably anticipate being haled into the Western District of Oklahoma because in 2000, SSFCU was served with a postjudgment garnishment affidavit for a case in the District Court of Comanche County. (Pl.'s Resp. at 5.) Plaintiff has not supported her argument that Defendant "used" an Oklahoma state court; according to the docket sheet for that case (supplied by Defendant), Defendant did not file an answer and no further action was taken. (Def.'s Reply at 5 n.7 & Ex. 1.)

District since either September or November of 2004, notwithstanding that she spent about one-half of 2005 living in Colorado. (Pl.'s Resp. Ex. A ¶ 12; Pl.'s Surreply Ex. B ¶ 2.) Plaintiff maintains she has received and signed documents from Defendant at the address of the house she rents in Oklahoma. (Pl.'s Surreply Ex. B ¶ 10.) Plaintiff's citizenship is the only real factual dispute in the Rule 12(b)(2) determination for this case; however, the issue does not bear significant weight as to jurisdiction over Defendant. Federal courts are generally "unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant." OMI, 149 F.3d at 1091 (internal quotation marks omitted). Plaintiff's unilateral relocation to Oklahoma and corresponding change of mailing address, more than three years after she signed her original loan note with Diakonia, does not translate into Defendant SSFCU taking any kind of purposeful direction or solicitation toward Oklahoma or its citizens. In the case at hand, the Court is hard-pressed to find that Defendant has a discernible "presence" in the forum.

However, even if the Court assumed that Defendant purposefully availed itself of the privilege of conducting business in Oklahoma, the other required component for sufficient minimum contacts is not met here. The second step in the minimum contacts analysis requires the Court to determine whether Plaintiff's claims arise out of or result from activities by Defendant within the forum – "whether a nexus exists between Defendant's forum-related contacts and the Plaintiff's cause of action." Id. at 1095. Plaintiff's claim must arise out of or result "from actions by the defendant [*it*]*self* that create a substantial connection with the

forum state." Id. at 1091; see also Kuenzle v. HTM Sport-Und Freizeitgeräte AG, 102 F.3d 453, 456 (10th Cir. 1996) ([T]he second prong . . . must be met before a court can properly exercise specific jurisdiction. The contacts must reflect purposeful availment *and* the cause of action must arise out of those contacts."). The required nexus is not found here. Defendant's only contacts arose from the Oklahoma real property mortgages. Plaintiff's claims arose out of her own dealings with Defendant and its predecessor, the bulk of which appear to have taken place in Colorado. There is no allegation that the mortgages of the five Oklahoma properties are even remotely connected to her complaint or that those mortgagors would qualify as members of the class Plaintiff seeks to represent.

Although Plaintiff argues that jurisdiction is proper because Defendant is "doing business" in the forum, her argument is not persuasive. The jurisdictional bar is set higher than merely "doing business," however that may be defined. The facts of this case do not support the existence of minimum contacts sufficient to establish specific jurisdiction. Because Defendant does not have the requisite minimum contacts with Oklahoma, the Court need not reach the second part of the due process inquiry regarding "whether 'the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."'" See Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc., No. 00-1411, 2001WL 912796, at *4 n.1 (10th Cir. Aug. 14, 2001) (quoting OMI, 149 F.3d at 1091).[2]

[2] Unpublished decision cited in accordance with 10th Cir. R. 36.3.

2. General Jurisdiction

Although specific jurisdiction fails here, the Court must inquire further as to whether general jurisdiction exists over Defendant. If, as in this case, "'the cause of action does not arise out of or relate to the foreign [defendant's] activities in the forum State,'" it does not offend due process to subject a defendant to personal jurisdiction "'when there are sufficient contacts between the State and the foreign [defendant].'" Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984) (alterations in original) (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984)). "[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." OMI, 149 F.3d at 1091 (internal quotation marks omitted).

In assessing Defendant's contacts with Oklahoma for the purpose of establishing general jurisdiction, the Court may consider: (1) whether Defendant solicits business in Oklahoma through a local office or agents; (2) whether Defendant sends agents into Oklahoma on a regular basis to solicit business; (3) the extent to which Defendant holds itself out as doing business in Oklahoma through advertisements, listings, or bank accounts; and (4) the volume of business Defendant conducts in Oklahoma. Kuenzle, 102 F.3d at 457. As discussed above in reference to specific jurisdiction, the first two of these inquiries must be answered in the negative, and the volume of business Defendant conducts in Oklahoma is

minimal. In addition, Plaintiff has made no showing that Defendant solicits business in Oklahoma, where it is not even authorized or licensed to operate.

Plaintiff argues that because Defendant did not refuse to assist five existing credit union customers after the customers moved to or wanted to buy property in Oklahoma, it should be subjected to jurisdiction in the Court. Her argument is unavailing and does not comport with the requirements for general jurisdiction. Defendant's holding of mortgages on property in the forum, even though it receives income from those mortgages, cannot be characterized as "continuous or systematic" contact with the forum. See, e.g., Street v. PSB Lending Corp., No. 01-2751-GV, 2002 WL 1797773, at *10-11 (W.D. Tenn. July 31, 2002) (finding no general jurisdiction "[w]hen a defendant's forum activities consist solely of holding mortgages secured by property in the forum state," although the defendant was receiving income from those mortgages);[3] Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 75-76 (D.R.I. 1995) (finding no general jurisdiction where defendant was the assignee of 138 mortgages, when defendant did not solicit these mortgages and they represented less than one-half of one percent of its overall mortgage repurchase and securities business). Neither Plaintiff's own claims nor any continuous and systematic activity by Defendant bears a connection to Oklahoma. Because Plaintiff does not contest that Defendant has no contacts with Oklahoma outside of these five mortgages, she has failed to demonstrate that general personal jurisdiction lies over Defendant in this case.

---

[3] Unpublished decision cited in accordance with 10th Cir. R. 36.3.

## III. CONCLUSION

Plaintiff has failed to demonstrate facts that, if true, would support jurisdiction over Defendant. The Court's exercise of personal jurisdiction would deprive Defendant of the due process rights guaranteed by the Constitution. Accordingly, Defendant SSFCU's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. No. 21) is GRANTED.

IT IS SO ORDERED this 7th day of November, 2006.

ROBIN J. CAUTHRON
United States District Judge